Roger G. FLITTIE, Appellant,

v.

Herman SOLEM, Warden; Richard Rist, Associate Warden; William Severson, Associate Warden; Dean Hinders, Associate Warden; Mike Brown, Officer of the South Dakota Penitentiary, sued in their official capacity and individually, Appellees.

No. 86–5415.

United States Court of Appeals, Eighth Circuit.

Submitted May 4, 1987.

Decided Aug. 18, 1987.

Rehearing Denied Sept. 10, 1987.

Roger G. Flittie, S.D., pro se.

Janine Kern, Pierre, S.D., for appellees.

Before McMILLIAN, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

PER CURIAM.

Roger G. Flittie, an inmate at the South Dakota State Penitentiary (SDSP), appeals pro se and in forma pauperis from the district court's [1] order granting appellees' motion for summary judgment in this civil rights action. We affirm.

## I. FACTS

In August of 1980, Flittie was assigned to work as an inmate law clerk in the prison library. On October 26, 1981, Associate Warden Severson filed a report charging Flittie with lying or knowingly providing a false statement to a staff member—a major rule infraction. Severson's report recommended that Flittie be relieved of his duties as library law clerk. At a subsequent hearing, the charge was downgraded from a major infraction to a minor infraction. Flittie received a reprimand, and a copy of Severson's report was forwarded to the law library supervisor (Associate Warden Hinders). Two weeks later, Associate Warden Rist dismissed Flittie from his position as law clerk.

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Thereafter, Flittie sought judicial review of his dismissal as law clerk pursuant to an optional review agreement stipulated to by the parties in *Cody v. Hillard,* 599 F.Supp. 1025 (D.S.D.1984), *aff'd,* 799 F.2d 447 (8th Cir.), *reh'g granted on different issue,* 804 F.2d 440 (8th Cir.1986), *reh'g to 8th Cir. en banc,* Jan. 12, 1987.[2] No judicial review of Flittie's dismissal has been conducted by the *Cody* court.

In September 1982, Flittie filed the present § 1983 complaint against Warden Solem and Associate Wardens Severson and Rist.[3] Associate Warden Hinders and Officer Brown were subsequently added as defendants. Flittie alleged that he had been improperly dismissed from his position as law clerk in retaliation for exercising his constitutional rights; that Solem, Severson, and Hinders had violated his *"jus tertii* right" to provide legal assistance to other inmates; and that the three had unjustifiably interfered with his right of access to the courts. Flittie sought declaratory and injunctive relief as well as damages. Both sides moved for summary judgment. The district court denied Flittie's motion and granted summary judgment in favor of defendants. The court stated that inmates have no constitutional right to prison jobs; that Flittie had not adequately alleged a factual basis for a retaliation claim relative to his job loss; and that the record failed to establish any unjustifiable interference with his right of access to the courts. Finally, the court

stated that Flittie's *jus tertii* claim would be cognizable under § 1983 only if he had also alleged that SDSP officials had failed to make other adequate legal assistance available to inmates. The court then found that the issue of the availability of adequate legal assistance had been fully and adequately litigated in *Cody* and thus concluded that Flittie's *jus tertii* claim was moot.[4] Accordingly, Flittie's complaint was dismissed, and this appeal followed.

## II. DISCUSSION

### A. Summary Judgment

Flittie first argues that the district court erred in granting summary judgment because genuine issues of fact existed relative to his claims of retaliation, job loss, and not receiving a disciplinary hearing on the rule infraction written up by Assistant Warden Severson. In support of this claim, he points to factual differences in affidavits submitted by the parties.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defect an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Our review of the record reveals that the documents that were before the district court were inadequate to show the existence of a material fact question sufficient

2. *Cody* is a class action challenging the conditions of confinement at SDSP. Flittie states in his brief that he acted as one of the class representatives in that case and that he had a very active role in gathering evidence and assisting class counsel. Following several alleged incidents of retaliation by prison officials, the parties in *Cody* stipulated that if Flittie or William Cody were disciplined or lost their prison jobs, they could request a hearing in court and on the record to determine if the action was taken in retaliation for their legal activities. However, the record reveals that the stipulation does not make such review mandatory, but provides that the court may, in its discretion, review the request.

3. Flittie and Cody filed a separate lawsuit against Rist in May of 1983 alleging intimidation and harrassment as a result of their

exercising their right of access to the court (*Flittie v. Rist,* Civ. No. 83–3041SD). Flittie, in *Rist,* asked again for review of his dismissal as law clerk. The parties' briefs reveal that Flittie's and Cody's claims were denied. The district court specifically stated that the power to grant review of Flittie's job loss lay with the *Cody* court and not the court in the *Rist* case. The record in the present case does not reveal whether an appeal was taken in the *Rist* case.

4. The issue relevant to this case decided in *Cody* was that the SDSP prisoners were denied fundamental constitutional rights of access to the courts. The state was ordered to submit a plan to correct the violation. *Cody v. Hillard,* 599 F.Supp. at 1061, 1062. It appears that the parties subsequently entered into a consent decree covering most of the violations and their remedies. *Cody v. Hillard,* 799 F.2d at 449.

to preclude entry of summary judgment under the governing law.

### B. Job Loss

■ Flittie claims that defendants dismissed him from his job as inmate law clerk in violation of his right to due process. Flittie concedes, as he must, that inmates have no constitutional right to be assigned to a particular job. *See Lyon v. Farrier,* 727 F.2d 766 (8th Cir.1984); *Peck v. Hoff,* 660 F.2d 371 (8th Cir.1981). He argues, however, that South Dakota inmates have a state-created substantive right to retain a job once the job is assigned, thus implicating due process procedural protections. He claims that this right has been created by various state statutes, prison regulations and a prison custom of not dismissing a prisoner from a job unless the prisoner has performed it incorrectly. We have recently held, however, that to create a liberty interest a state statute must place significant substantive restrictions on the decision making process. *Dace v. Mickelson,* 816 F.2d 1277, 1279–80 (8th Cir.1987) (en banc). Additionally, the statute must contain mandatory language similar to that in the statutes in issue in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

These "same standards apply to a review of a state rule, regulation, or practice, * * *." *Dace v. Mickelson,* 816 F.2d at 1279.

■ Flittie points to a statute[5] that grants general powers to the warden and to a statute that prohibits corporal punishment of prisoners.[6] Flittie additionally argues that two prison rules grant him a substantive right to retain his job.[7] We hold, however, that these statutes and regulations do not contain language that would support Flittie's claim. As to Flittie's bare allegation that it is the custom at the SDSP that no inmate can be dismissed from a job unless he commits a major rule infraction, there is nothing in the record, beyond Flittie's assertion, of any such custom.

### C. Assisting Other Inmates

Defendants told Flittie that he could not help other inmates in the law library. Flittie claims that this restriction violates his first amendment right to give legal assistance to other inmates. Other courts have reserved ruling on the question whether an inmate has a first amendment right to provide other inmates with legal assistance separate from the other inmates' right to receive the legal assistance. *See Kunzel-*

---

**5.** All officers and persons employed by the state penitentiary shall perform such duties as may be required of them by the warden, in conformity with law and the rules and regulations of the penitentiary. The board of charities and corrections may promulgate rules establishing standards of personal conduct for penitentiary officers and employees. The standards shall be consistent with those standards of personal conduct required of law enforcement personnel. S.D.Codified Laws Ann. § 24–1–11 (Supp.1986).

**6.** Any convict violating the rules, regulations or policies of the board of charities and corrections is subject to any one or more of the following disciplinary sanctions:
(1) Recommendation for withholding of statutory time for good conduct;
(2) Punitive confinement with automatic loss of good time;
(3) Imposition of fines;
(4) Restriction of privileges;
(5) Loss of work, school or trustee status;
(6) Labor without compensation;
(7) Referral to either various programs or resources or both;
(8) Transfer to a more secure housing unit.

There shall be no corporal punishment inflicted upon convicts in the penitentiary. S.D.Codified Laws Ann. § 24–2–9 (Supp.1986).

**7.** Inmates shall be responsible for all tools and materials assigned to them and shall not misuse or damage machines, tools, or other property. S.D.Admin.R. 17:50:03:04 (Revised 1979).

In the event the disciplinary board finds the inmate guilty or he pleads no contest to having violated a rule of the penitentiary, the board may discipline the inmate by one or more of the following: referral to specific institutional programs and/or resources; reprimand; restriction of privileges; forfeiture of pay; loss of work; segregation; recommendation for loss of good time; or in any other manner considered necessary by the board which is consistent with state law. The board may consider the inmate's record, history, progress, or other pertinent information in determining disciplinary action. S.D.Admin.R. 17:50:04:10 (Revised 1979).

*man v. Thompson,* 799 F.2d 1172, 1178 n. 6 (7th Cir.1986); *Buise v. Hudkins,* 584 F.2d 223, 231 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Bridges v. Russell,* 757 F.2d 1155, 1157 (11th Cir.1985). This court has held, however, that there is no constitutional violation in prohibiting an inmate from assisting other inmates in legal matters "so long as prison officials make available to those other inmates assistance from persons trained in the law." *Ervin v. Ciccone,* 557 F.2d 1260, 1262 (8th Cir.1977) (per curiam). The record reveals that there are currently three prison law library law clerks. Flittie asserts that he is the only inmate who can give meaningful help to the other prisoners. The district court, however, held that the issue of the South Dakota inmates' right of access to the courts had been addressed in *Cody* and that therefore the issue was moot. Flittie argues that the issue is not moot because after *Cody* he was still prevented from assisting inmates and that thus their rights of meaningful access to the courts were violated. Flittie claims a *jus tertii* right to litigate this purported violation on their behalf.[8] *See Wilson v. State of Iowa,* 636 F.2d 1166, 1167 (8th Cir.1981) (jailhouse lawyers have standing to challenge official action that prevents them from assisting others).

■ We conclude that Flittie lacks the necessary standing to bring this *jus tertii* action. *Jus tertii* is based on the theory that a third party having rights is unable to claim a violation of those rights. Thus, another can gain standing to assert those rights on behalf of the third party. *Rhodes v. Robinson,* 612 F.2d 766, 769 (3d Cir.1979). South Dakota prisoners asserted their rights in *Cody.* They still have the right to assert, if they choose to do so, a constitutional violation flowing from their being denied Flittie's legal assistance. We conclude, therefore, that Flittie does not have a *jus tertii* right to assert in this case.

**D. Access to the Courts**

Flittie claims that his constitutional right of access to the courts was violated as a result of the restriction on his use of the law library. He was allowed to use the library only after other prisoners who were not regular users of the facility were finished with their legal work. Defendants state that this allocation system prevents domination by the regular users of the law library.

Prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1495–96, 52 L.Ed.2d 72 (1977). Access to the law library may be restricted, however, as long as the restrictions are reasonable. *See Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). After the restrictions were imposed, Flittie used the prison law library on the average of three days a week. We hold that this is a reasonable restriction imposed for a rational reason.

■ Additionally, Flittie has not shown any prejudice resulting from these restrictions. As the district court pointed out, Flittie has filed six other actions since the present case was filed in September of 1982. *See Grady v. Wilken,* 735 F.2d 303 (8th Cir.1984) (per curiam) (non-prejudicial effect of alleged constitutional violation was factor in affirming district court). Thus Flittie has not established a denial of his first amendment right of access to the courts.[9]

**E. Disciplinary Hearing**

Flittie asserts that he was not given a disciplinary hearing regarding his alleged rule infraction as mandated by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). He alternatively claims, however, that he was fired as prison law clerk as a direct result of a disciplinary hearing. The record reveals that he did receive some type of hearing. As earli-

---

8. Apparently, Flittie believes he should get monetary damages on behalf of the other prisoners at the SDSP.

9. Right of access to the courts has been viewed as an aspect of the freedom of petition clause of the first amendment. *Harrison v. Springdale Water and Sewer Comm'n,* 780 F.2d 1422, 1427 n. 7 (8th Cir.1986).

er stated, however, Flittie had no substantive liberty interest in retaining his job as prison law clerk and thus had no right to procedural due process protection. In any event, Flittie has failed to show a direct link between the hearing and his dismissal as prison law clerk. The copy of the rule infraction report was sent to his prison law library supervisor (Hinders) by the three-member disciplinary board.[10] It was Warden Rist, however, who dismissed Flittie as law clerk.

▮ Flittie additionally claims he was denied equal protection in that he was given a hearing on his rule infraction different from that which other inmates would have been given. To prove an equal protection claim, Flittie must show treatment that was invidiously dissimilar from that accorded other inmates, with no rational basis existing for the difference in treatment. *Burns v. Swenson,* 430 F.2d 771, 778 (8th Cir.1970), *cert. denied,* 404 U.S. 1062, 92 S.Ct. 743, 30 L.Ed.2d 751 (1972). The record reveals little information on what actually happened regarding the hearing. Taking into account the meager facts that were before the district court, it appears that Flittie received the type of hearing that all prisoners charged with a minor rule infraction would have received, and thus no equal protection violation has been established.

### F. Retaliation Claim

Finally, Flittie alleges that defendants took the above-discussed actions in retaliation for his legal activities. The district court concluded that the allegations in Flittie's pleadings and other documents he submitted in connection with his motion for summary judgment provided an inadequate factual basis for a retaliation claim.

▮ Prison officials may not retaliate against an inmate for exercising constitutional rights. However, as discussed above, Flittie had no constitutionally protected right in retaining his job, providing legal assistance to other inmates, or in

receiving a *Wolff v. McDonnell* type hearing. With respect to Flittie's allegations that defendants retaliated against him for exercising his own right of access to the courts, the record supports the district court's conclusion that Flittie's allegations are simply too broad and conclusory to support a claim for § 1983 relief. *See Ervin v. Ciccone,* 557 at 1262 (broad allegations of retaliation are not sufficient to support a claim for violation of constitutional rights).

### III. CONCLUSION

The district court's order is affirmed.

---

**10.** The persons who made allegations of Flittie's rule infraction did not participate as members of the three-member disciplinary board, thus

there is no issue as to the bias of the board. *Cf. Malek v. Smith Camp,* 822 F.2d 812 (8th Cir. 1987).