Samuel C. HAMM, Appellant,

v.

Dick MOORE, Bill Armontrout, Larry H. Henson, Lt. Bohannan, Co. I Eye, Co. I Craig, Lt. Malone, Sgt. Compton, Appellees.

No. 91–3504.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1992.

Decided Dec. 14, 1992.

Martin D. Warhurst, Kansas City, MO, for appellant.

Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, MO, for appellees.

Before Judges McMILLIAN, WOLLMAN, and LOKEN.

WOLLMAN, Circuit Judge.

Samuel C. Hamm appeals from the district court's[1] order dismissing his complaint brought under 42 U.S.C. § 1983. We affirm.

## I.

Hamm, an inmate confined at Jefferson City Correctional Center (JCCC), a Missouri penal institution, named as defendants the Director of the Missouri Department of Corrections (MDOC), officials at MDOC, and officials at JCCC.

Hamm alleged that the defendants engaged in a pattern of harassment in retaliation for Hamm's performance of his duties as a prison law clerk. Hamm specifically alleged that the defendants' retaliatory conduct included: 1) threatening him with administrative segregation; 2) citing him for fictitious conduct violations; 3) ignoring his due process rights in conducting the hearings on his conduct violations; 4) failing to protect him from an attack by an HIV positive inmate; and 5) knowingly allowing him to be exposed to an inmate with tuberculosis. Notwithstanding this alleged retaliatory conduct, however, the defen- dants did not dismiss Hamm from his law clerk position.

The district court adopted the magistrate judge's[2] report and recommendation. The district court entered summary judgment in favor of the defendants on October 1, 1991. On October 31, 1991, Hamm submitted his notice of appeal to David Hull, a prison case worker, who notarized it. Hull informed Hamm that the document probably would not be mailed until the next day. Hamm dated his certificate of mailing November 1, 1991, and the notice was mailed on that date. The notice of appeal was stamped as filed in the district court clerk's office on November 4, 1991.

We appointed counsel to assist Hamm on appeal and requested supplemental briefing on two issues: 1) whether Hamm's notice of appeal was timely under *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and 2) whether prison officials may, in the light of *Flittie v. Solem*, 827 F.2d 276 (8th Cir.1987), punish or harass an inmate for the legal assistance he provides other inmates after having granted him permission to render such assistance. We address these issues in turn.

## II.

In *Houston v. Lack*, the Supreme Court held as timely filed a pro se notice of appeal deposited by an inmate with prison authorities for mailing within the thirty-day period fixed by Fed.R.App.P. 4(a) for the filing of a notice of appeal. The Court held that "the Court of Appeals had jurisdiction over petitioner's appeal because the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." 487 U.S. at 276, 108 S.Ct. at 2385. The Court reasoned that Houston lost control over and contact with his notice of appeal when he delivered it to the prison authorities and not when the clerk received it. *Id.* at 275, 108 S.Ct. at 2384. The Court observed that Fed. R.App.P. 4(a) contemplates a civil litigant

---

1. The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

2. The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri.

who chooses to mail a notice of appeal and who should thus assume the risk of untimely delivery and filing. *Id.* By contrast, a pro se prisoner has no choice but to submit his notice to prison authorities for forwarding to the court clerk. *Id.*

■ The question before us is whether the rationale of *Houston v. Lack* should apply to a pro se notice of appeal in a section 1983 action submitted by an inmate to prison authorities for filing within the time fixed by Fed.R.App.P. 4(a).

Other circuits that have considered this question have extended the *Houston* rule to section 1983 suits by pro se prisoners. In *Hostler v. Groves,* 912 F.2d 1158, 1160 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991), the court observed that "[t]he opinion in *Houston* gives no indication that its holding should be limited to habeas cases." The court noted that *Houston*'s underlying policy—that of not penalizing pro se prisoners for delays over which they have no control once they have timely delivered notices of appeal to prison authorities—applies with equal force to section 1983 actions. 912 F.2d at 1161. Moreover, the court recognized that "[i]n fact, prison authorities would have greater incentive to delay the processing of section 1983 suits, since such suits often target prison officials." *Id.* *See also Vaughan v. Ricketts,* 950 F.2d 1464, 1467–68 (9th Cir.1991). In *Lewis v. Richmond City Police Dept.,* 947 F.2d 733, 735–36 (4th Cir.1991) (per curiam), the court set forth the considerations that prompted it to extend *Houston*'s holding to pro se complaints filed in civil actions:

The concerns which prompted the Supreme Court's ruling in *Houston* are equally present in the case at hand. The litigants are similarly situated. Both are incarcerated pro se litigants who are unable to monitor the process of the mails as are other litigants. They are unaware of delays and unable to rectify any problems even if they were apprised of them. They cannot deliver a copy of their document to the clerk by hand, and do not have access to express mail services. They must rely on correctional authorities, who may be motivated to delay the filing. If the pleading is delayed, they have no way to determine the cause and possibly obtain evidence to support a finding of excusable neglect. Because they are acting pro se, they do not have an attorney who can monitor the process for them. Furthermore, correctional facilities maintain records of outgoing prisoner mail, thereby minimizing disputes and uncertainties regarding the moment of filing.

We agree with the reasoning in *Hostler* and *Lewis,* and we therefore hold that Hamm's appeal was timely under *Houston* if he delivered the notice of appeal to prison authorities within the filing time limit with instructions that it be mailed.

■ Defendants request that if *Houston* is held to apply to Hamm's notice of appeal, we remand the case to the district court for a determination of whether the notice of appeal was timely delivered to prison authorities. Although in another case such a remand might be appropriate, we conclude that remand is not required in this case. The "Certificate of Mailing" attached to Hamm's notice of appeal was notarized on October 31, 1991. *See* Designated Record on Appeal at 453. As Hamm's reply brief notes, it is highly improbable that Hamm would have first had a prison official notarize his notice of appeal and would then have refused to permit the official to take the document with him for mailing purposes. Thus, we conclude that the appeal was timely filed.

## III.

■ Turning to the merits of the appeal, Hamm argues that the district court erred in granting summary judgment on his claim that prison officials harassed him to prevent him from carrying out his duties as one of the prison's law clerks. *Flittie v. Solem,* 827 F.2d 276 (8th Cir.1987), controls the resolution of this issue.

The facts of *Flittie* closely resemble the facts in this case. Flittie, an inmate law clerk, received a reprimand from prison authorities for a rule infraction and was

dismissed from his law clerk position two weeks later. *Id.* at 277. Flittie then filed a section 1983 complaint alleging, among other things, that he had been improperly discharged from his law clerk post in retaliation for exercising his constitutional rights and that prison officials had violated his *jus tertii* right to provide assistance to other inmates. *Id.* at 278. We held that Flittie had no constitutional right to retain his job as an inmate law clerk and that he lacked the necessary standing to bring a *jus tertii* action on behalf of the prisoners who would be deprived of his services because the record revealed that other law clerks were available to assist the prisoners. Accordingly, we also held that he could state no claim for retaliation in the absence of the exercise of constitutionally protected rights. *Id.* at 279–81.

The only major factual distinction between *Flittie* and this case is that although Hamm has alleged harassment by prison authorities, he has not been discharged from his job. Flittie held no constitutional right to have or to retain his job; thus Hamm's claim, which merely addresses the conditions under which he performs his law clerk job, is not cognizable under section 1983. In the light of *Flittie*'s holding that Flittie lacked standing to assert third party prisoners' claims of deprivation of legal services as a consequence of his discharge, Hamm may not assert *jus tertii* standing in view of the fact that the defendants have permitted him to keep his job. Last, just as Flittie did not state a claim for relief under section 1983 in alleging that prison officials had fired him from his job in retaliation, Hamm cannot state a claim for relief based upon retaliatory conduct in view of his concession that the defendants have not fired him from his job.

After a careful review of the record, we find the remaining issues raised by Hamm to be without merit. Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants.

LOKEN, Circuit Judge, concurring.

Though I concur in the result reached by the panel, I write separately because I disagree with the court's premise that this case is controlled by *Flittie v. Solem*, 827 F.2d 276 (8th Cir.1987).

An inmate has a constitutional right to reasonable access to the courts. This includes the right to the assistance of inmate law clerks unless prison officials provide some other reasonable form of legal assistance. *See Johnson v. Avery*, 393 U.S. 483, 489–90, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). However, the inmate has no right to the assistance of a particular law clerk, nor does an inmate law clerk have a constitutional right to hold that position.

When prison officials dismiss a law clerk, even in retaliation for the legal services he has provided to an inmate client, there is little risk that the client's right of access will be undermined as long as another source of assistance is made available. And if the client does lose effective assistance, he is perfectly capable of perceiving that loss and, if necessary, enforcing his right of access by bringing a § 1983 action in his own name. Thus, in *Flittie*, we held that the terminated law clerk had no standing to assert the client's right of access in a *jus tertii* law suit.

The situation is different, however, if prison officials harass or punish the inmate law clerk for legal assistance provided to an inmate client but allow the law clerk to continue to provide such assistance. In these circumstances, the quality of the assistance provided by the law clerk will be adversely affected if the harassment succeeds in its unconstitutional purpose. Moreover, it is far more likely that this adverse effect will go undetected by the client, or will prove impossible to measure. Thus, I conclude that the retaliation claim asserted by Hamm in this case implicates the client's right of access to the courts far more intensely than did the claim we rejected in *Flittie*.

Nevertheless, I concur in the dismissal of Hamm's *jus tertii* claim. When harassment of a law clerk adversely affects the client's right of access, it is the client whose constitutional rights are violated and who is therefore entitled to § 1983 relief. In this case, Hamm has not alleged that his

inmate clients were unaware that harassment had undermined his legal assistance to them, or that they were otherwise unable to assert their access rights in their own name. *Compare Eisenstadt v. Baird*, 405 U.S. 438, 445–46, 92 S.Ct. 1029, 1034, 31 L.Ed.2d 349 (1972). Therefore, although I do not consider the issue directly controlled by *Flittie*, I agree that Hamm has not established standing to assert a *jus tertii* claim.